UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARCY E. THOMAS,

               Plaintiff,

                                 Case No. 2:13-cv-10103

v.

                                 Honorable Patrick J. Duggan

PINNACLE FOODS GROUPS LLC,

               Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

     In this action, Plaintiff Darcy Thomas is suing her former employer,

Defendant Pinnacle Foods Group, LLC, alleging that she was discharged in

retaliation for engaging in protected activity under the Michigan Whistleblower's

Protection Act (the "WPA"), Michigan Compiled Laws § 15.362.  This matter is

presently before the Court on Defendant's Motion for Summary Judgment filed

pursuant to Federal Rule of Civil Procedure 56.  Plaintiff has responded to

Defendant's Motion and Defendant has replied.  The Court has reviewed and

considered the parties' briefs and supporting evidence, and has had the benefit of

hearing the arguments of counsel at the September 19, 2013 motion hearing.  For

the reasons set forth herein, the Court grants Defendant's Motion for Summary

Judgment.  The Court also denies Plaintiff's request to amend, which Plaintiff sought at the motion hearing.

## I.      Factual and Procedural Background

Defendant Pinnacle produces Vlasic pickles and similar food products at its facility in Imlay City, Michigan.  The production of these foodstuffs, like much else in the American economy, occurs in a sequential fashion and Pinnacle utilizes an assembly line to separate each task along the way.  Plaintiff began working at Pinnacle as a seasonal employee in April 2011.  (Pl.'s Dep., Def.'s Mot. Ex. 2 at 23:20-25; *id.* at 59:10-11.)   During her first season at Pinnacle, Plaintiff operated a waterjet machine.  (*Id.* at 36:5-7.)  During her second stint, Plaintiff worked as a labeler operator.  (*Id.* at 79.)  While employed by Pinnacle, Plaintiff was a member of the United Dairy and Bakery Workers Union, Local 87.  (*Id.* at 52:1-8.)  As a member of that union, Plaintiff was entitled to file grievances and discuss any safety concerns with Union Steward Dave Hensley.  (*Id.* at 52:13.)

Sometime toward the end of July 2012 or in the beginning of August 2012 – during Plaintiff's first week of training on the labeler device – Plaintiff was shocked while cleaning the machine.  (*Id.* at 141.)   Despite feeling comfortable going to human resources to discuss work-related issues, Plaintiff did not report the incident to anyone in that department.  (*Id.* at 77, 158.)  Plaintiff did, however, relay what occurred to several individuals at work in effort to have any safety

2

problem corrected.  Specifically, Plaintiff told Heather (her trainer), Shaniqua (another labeler), Trevor Montroy (a supervisor), Patrick Armstrong (her crew leader),[1] Andrew Kinch (a "lead guy"), Steve Trowhill (a maintenance man),[2] the third shift electrician, Colleen Davlin (the Manager of Safety and Health),[3] Dave Hensley (her Union Steward),[4] and she may have told her direct supervisor Dave Boughan but could not recall with specificity.[5]  (*Id.* at 151-56.)  According to Plaintiff, Mr. Hensley indicated that there was nothing the union could do but advised Plaintiff to contact someone at the Occupational Safety and Health Administration ("OSHA").  (*Id.* at 178:3-6.)

---

[1] Mr. Armstong testified during his deposition that Plaintiff never came to him to report being shocked by the labeler but that he did hear other employees discussing the incident in the days that followed.  (Armstrong Dep., Def.'s Ex. 20 at 68-70.)

[2] Mr. Trowhill testified that he had no recollection of Plaintiff telling him that she was shocked on the labeler but did state that she may have discussed other maintenance concerns with him.  (Trowhill Dep., Def.'s Mot. Ex. 19 at 17:17-18:9.)

[3] At her deposition, Ms. Davlin testified that Plaintiff never approached her about being shocked by the labeler device.  (Davlin Dep., Def.'s Mot. Ex. 6 at 60:11-16.)

[4] Mr. Hensley testified during his deposition that he had no recollection of Plaintiff coming to him about a safety concern involving the labeler device. (Hensley Dep., Def.'s Mot. Ex. 18 at 50:16-20.)

[5] Mr. Boughan testified that Plaintiff never told him about being shocked and that he never heard about the incident.  (Boughan Dep., Def.'s Mot. Ex. 5 at 91-92.)

After complaining of the shocking incident internally, Plaintiff began to experience increased scrutiny at work.  (Pl.'s Resp. 1-3; *see also* Pl. Dep., Def.'s Mot. Ex. 2 at 94:5-8 ("I think ever since I got [shocked] on the labeler that I had all these problems with these people, bottom line.  To be 100 percent honest with you I think that's what the problem was.").)  For example, on August 17, 2012, while Plaintiff was attending safety training, a supervisor came to her and instructed her to return to work.  (Pl.'s Resp. at 2.)  Because the training was mandatory, Plaintiff could not return as asked; however, when she did return to her machine, her supervisor Mr. Boughan was operating it.  (*Id.*)  Another incident occurred on August 23, 2012, when Mr. Boughan wrote Plaintiff up for running the labeler at an inappropriately high speed.  (Incident Report, Def.'s Mot. Ex. 9.)  Plaintiff contested her responsibility for increasing the machine's speed and indicated that Mr. Armstrong, who was running the machine while she was taking a break, must have been responsible.  (*Id.*)

The increased scrutiny became so problematic that on August 27, 2012, Plaintiff filed a harassment claim with human resources against Mr. Boughan. (Thomas Statement, Def.'s Mot. Ex. 13.)  Plaintiff did not, however, mention any connection between Mr. Boughan's allegedly harassing conduct and the shocking incident.  In fact, Plaintiff testified that she was "not sure" what motivated Mr. Boughan to harass her.  (Pl. Dep., Def.'s Mot. Ex. 2 at 93:17-19.)

4

Having failed to convince anyone at Pinnacle to address the problem with the labeler device, Plaintiff called the Michigan Occupational Safety and Health Administration ("MIOSHA") in the "[l]ater part of August" to report a safety problem, namely that she had been shocked on a machine at work. (*Id.* at 170:10-11.) After Plaintiff described what happened over the telephone, the MIOSHA representative indicated that "she would send [Plaintiff] the paperwork." (*Id.* at 172:22.) Plaintiff filled out and signed the paperwork and sent it back to MIOSHA on September 18, 2012, the same day that she was ultimately terminated. (Pl.'s Br. 14.) MIOSHA visited Defendant's facility on September 28, 2012 and after inspecting the premises, the MIOSHA representative was unable to substantiate any hazards and Defendant received no citations. (MIOSHA Report, Def.'s Mot. Ex. 14.)

According to Defendant, Plaintiff's September 18, 2012 termination had nothing to do with Plaintiff's purported safety concerns. Rather, the termination was the result of events transpiring on September 14, 2012 and the company's policies addressing those events. Plaintiff's line was scheduled to work until 1:00 a.m. on September 14, 2012. Although Plaintiff vigorously disputes that a notice of overtime was posted, Defendant claims Plaintiff's line was scheduled for overtime and that a notice reflecting this scheduling change was posted in the facility cafeteria. (DeWitte Aff., Def.'s Mot. Ex. 17 at ¶ 6.) Unaware that she was

supposed to work overtime, Plaintiff left work shortly after her regularly-scheduled shift and did not work overtime that evening.  As a result, Shift Manager Eric Rapp reported Plaintiff for "walking off the job."  (*Id.* at ¶ 4.)

Human Resources Representative Dawn Dewitt conducted an investigation of Mr. Rapp's report and ultimately determined that Plaintiff violated Employee Handbook Rule 10A by leaving work without a manger's permission.  (*Id.* at ¶ 10.) In accordance with the Employee Handbook, Plaintiff received a ten-day suspension, accumulating one demerit for each day.  (Employee Handbook, Def.'s Mot. Ex. 1.)  Having exceeded the six demerit limit that seasonal employees are permitted to receive, (*id.*), Defendant terminated Plaintiff on September 18, 2012.

The individuals employed in Pinnacle's human resources department who either investigated Mr. Rapp's report or recommended and approved Plaintiff's termination once that investigation was complete, denied having any knowledge that Plaintiff was shocked while cleaning her labeler device or that Plaintiff had concerns about the safety of Pinnacle's facility or machinery.  (Struder Dep., Def.'s Mot. Ex. 4; Struder Aff., Def.'s Mot. Ex. 15; Hudson Aff., Def.'s Mot. Ex. 16; DeWitte Aff., Def.'s Mot. Ex. 17.)

In December 2012, Plaintiff initiated this action in the Circuit Court for the County of Genessee.[6]  Defendant timely removed the action to this Court on the

---

[6] Case No. 12-99533-CZ.

6

basis of diversity jurisdiction on January 11, 2013.  28 U.S.C. §§ 1332, 1441,

1446.  Upon the completion of discovery, Defendant filed a motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56 seeking dismissal of

Plaintiff's sole cause of action arising under the WPA.

## II.     Standard of Review

Federal Rule of Civil Procedure 56 instructs courts to "grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a) (2012).  A court assessing the appropriateness of summary judgment asks

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.

2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct.

2505, 2512 (1986)).

The initial burden of proving the absence of a genuine dispute rests with the

movant, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), who

"must support the assertion by: (A) citing to particular parts of materials in the

record…; or (B) showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact[,]"  Fed. R. Civ. P. 56(c)(1)(A)-(B).   While this

7

inquiry requires the Court to construe factual disputes, and the inferences there

from, in the light most favorable to the non-moving party, only disputes over facts

that might affect the outcome of the suit preclude the entry of summary judgment.

*Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S. Ct.

at 2510.

If the moving party discharges their initial burden using the materials

specified in Federal Rule of Civil Procedure 56(c), the burden of defeating

summary judgment shifts to the non-movant who must point to specific material

facts – beyond the pleadings or mere allegation – which give rise to a genuine issue

of law for trial.  *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514.  A mere scintilla of

evidence supporting the non-movant's claim will not prevent summary judgment;

rather, there must be evidence on which a jury could reasonably find for the non-

movant.  *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

Moreover, if, "after adequate time for discovery and upon motion," the non-

movant "fails to make a showing sufficient to establish the existence of an element

essential to that party's case[] and on which that party will bear the burden of proof

at trial[,]" a court should enter summary judgment in favor of the moving party.

*Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.  When this occurs, "there can be 'no

genuine issue as to any material fact,' since a complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other

8

facts immaterial." *Id.* at 323, 106 S. Ct. at 2552. Thus, if the non-movant does not

support the elements of a claim or defense, the moving party is "entitled to

judgment as a matter of law."

### III.   Analysis

Plaintiff contends that Defendant discharged her in violation of the WPA,

which provides:

> An employer shall not discharge, threaten, or otherwise
> discriminate against an employee regarding the
> employee's compensation, terms, conditions, location, or
> privileges of employment because the employee, or a
> person acting on behalf of the employee, reports or is
> about to report, verbally or in writing, a violation or a
> suspected violation of a law or regulation or rule
> promulgated pursuant to law of this state, a political
> subdivision of this state, or the United States to a public
> body, unless the employee knows that the report is false,
> or because an employee is requested by a public body to
> participate in an investigation, hearing, or inquiry held by
> that public body, or a court action.

Mich. Comp. Laws § 15.362.

Being "analogous to antiretaliation provisions of other employment

discrimination statutes," claims brought under the WPA "should receive treatment

under the standards of proof of those analogous statutes." *Shallal v. Catholic Soc.*

*Servs.*, 455 Mich. 604, 617, 566 N.W.2d 571, 577 (1997) (overruled in part on

other grounds). Accordingly, in analyzing actions brought pursuant to the WPA

where, as here, a plaintiff relies on circumstantial evidence, Michigan courts have

adopted the *McDonnell Douglas* burden shifting framework employed in Title VII and Michigan Civil Rights Act cases.  *See, e.g.*, *Debano-Griffin v. Lake Cnty. Bd. of Comm'rs*, 493 Mich. 175-76, 828 N.W.2d 634, 638 (2013).  This evidentiary framework requires a plaintiff to make a *prima facie* showing that her termination was retaliatory in order to survive summary judgment.  *Id.* at 176, 828 N.W.2d at 638.  If a plaintiff discharges this initial burden, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for terminating the plaintiff's employment.  *Id.* at 176, 828 N.W.2d at 639.  To withstand summary judgment, the plaintiff must then present sufficient evidence showing that the defendant's articulated reason for the termination was not the real reason but that the reason offered was merely a pretext for unlawful retaliation.  *Id.*

**A.    Plaintiff Has Not Established a *Prima Facie* Case of Unlawful Retaliation Because Plaintiff Has Not Demonstrated Causation**

To establish a *prima facie* case pursuant to the WPA, a plaintiff must present evidence that (1) the plaintiff engaged in protected activity as defined by the Act, (2) the defendant took an adverse action against the plaintiff, and (3) "a causal connection exists between the protected activity" and the adverse employment action.  *Id.* at 175, 828 N.W.2d at 638 (quotation omitted).  The WPA defines "protected activity" as consisting of the following: (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a

public body; or (3) being asked by a public body to participate in an investigation. Mich. Comp. Laws § 15.362.

Defendant believes that summary judgment is appropriate as a matter of law because Plaintiff has failed to adduce facts in support of a *prima facie* case. Defendant argues that "[a]ssuming *arguendo* that Plaintiff engaged in protected activity, Plaintiff cannot establish a causal connection between any alleged protected activity and her termination because it is undisputed that no decision maker had any knowledge of her complaint to MIOSHA prior to her termination." (Def.'s Br. 10 (emphasis removed).) Plaintiff responds to this argument by suggesting causation may be inferred due to the increased scrutiny Plaintiff faced at work after being shocked by the labeler machine as well as the close temporal proximity between her protected activity and the adverse employment action. (Pl.'s Br. 12-13.)

To establish a causal connection between the protected activity and the termination (the adverse employment action), Plaintiff must present evidence that Defendant had "objective notice" of her protected activity. *Richards v. Sandusky Cmty. Schs.*, 102 F. Supp. 2d 753, 763(E.D. Mich. 2000) (citing *Roberson v. Occupational Health Ctrs. Of Am., Inc.*, 220 Mich. App. 322, 326, 559 N.W.2d 86, 88 (1996) ("'An employer is entitled to objective notice of a report or threat to report by the whistleblower.'" (quoting *Kaufman & Payton, P.C. v. Nikkila*, 200

11

Mich. App. 250, 257, 503 N.W.2d 728, 732 (1993))).  Courts have interpreted objective notice "to mean that the person who fired the employee was aware of the protected activity in which the employee engaged."  *Saloka v. Shelby Nursing Ctr. Joint Venture*, Nos. 255954, 257200, 2005 Mich. App. LEXIS 3033, at *12 (Mich. Ct. App. Dec. 6, 2005) (unpublished) (per curiam) (citation omitted). Accordingly, Plaintiff must point to evidence creating a disputed issue of material fact with respect to whether the individuals involved in Plaintiff's termination decision possessed "objective notice" of her protected activity.  This Plaintiff cannot do.

During her deposition, Plaintiff testified that she told several people at Pinnacle about the incident where she received a shock from the labeler device, (Pl. Dep., Def.'s Mot. Ex. 2 at 148:23-149:4), including some individuals employed in a management capacity, (*id.* at 152:3-5, 152:17-19).  Those with some sort of management function include Trevor Montroy, a crew leader, Andrew Kinch, "a lead guy," and Colleen Davlin, Defendant's safety manager.  (*Id.* at 152:7-8, 152:20-22, 154:14-15.)  Plaintiff may have told her supervisor Dave Boughan, but could not recall whether or not she actually did.  (*Id.* at 153:20-25.) At his deposition, Mr. Boughan testified that he had no recollection of Plaintiff coming to him about a safety concern involving the labeler device.  (Hensley Dep., Def.'s Mot. Ex. 18 at 50:16-20.)  Moreover, Ms. Davlin did not corroborate

12

Plaintiff's testimony but rather testified at her deposition that Plaintiff never mentioned receiving a shock from the labeler. (Davlin Dep., Def.'s Mot. Ex. 6 at 60:11-16.)

      While contradictory, the above-described testimony does not give rise to a genuine dispute of material fact.  While, viewing the evidence in the light most favorable to Plaintiff, some non-managerial Pinnacle employees may have been aware that Plaintiff was shocked by the labeler device, evidence that "non-managerial, non-decision-making employees" knew of the incident "does not create a reasonable inference that any managerial level, decision-making employee knew [Plaintiff] had filed[, or intended to file] a complaint with MIOSHA." *Carruthers v. Isringhausen, Inc.*, No. 296250, 2011 Mich. App. LEXIS 929, at *8 n.2 (Mich. Ct. App. May 19, 2011) (unpublished).  Assuming that some of the aforementioned individuals possessed management authority, it is undisputed that none of these individuals were involved in the decision to terminate Plaintiff. *Pethers v. Metro Lift-Propane*, No. 09-10516, 2010 U.S. Dist. LEXIS 76776, at *25 (E.D. Mich. July 29, 2010) (unpublished) (explaining that evidence that plaintiff, a former driver, discussed the possibility of filing of a complaint with his fellow drivers did not provide employer with objective notice of plaintiff's intent to file a complaint even where one participant in the discussions held the title of "lead driver" and had some management responsibilities).

13

Further eroding Plaintiff's argument that Defendant violated the WPA is the fact that complaining to fellow employees or even to management does not amount to protected activity; rather, to be protected by the Act, a whistleblower must report a violation or be about to report a violation to a "public body[.]"  Mich. Comp. Laws § 15.362.  While complaints to fellow employees may be a precursor to a report to a public body, an employer's subjective fear that an employee has reported or intends to report a violation "will not substitute for some form of notice of threatened action."[7]  *Kaufman & Payton, P.C.*, 200 Mich. App. at 257, 503 N.W.2d at 732.

Bolstering Defendant's position that nobody involved in Plaintiff's termination had "objective notice" of Plaintiff's protected activity is Plaintiff's testimony that the only person she spoke to about the possibility of filing a complaint with either OSHA or MIOSHA was Mr. Hensley, her Union Steward. (Pl. Dep., Def.'s Mot. Ex. 2 at 202:11-18; *see also id.* at 169:15-21 (Plaintiff testifying that she never raised the issue of reporting the safety problem with anybody in management or anybody in a supervisory role).)  According to Plaintiff, she went to Mr. Hensley to tell him about being shocked on the labeler

---

[7] For this reason, the Court finds that Plaintiff's allegations regarding being subjected to increased scrutiny at work after being shocked lend little credence to her retaliatory discharge claim.  (Pl.'s Resp. 14 ("…Plaintiff's supervisors also intensified their scrutiny of her work after she complained about the safety concerns.").)

14

device and he told her that she should contact somebody at OSHA. (*Id.* at 155:8-14.)  Plaintiff never told "anybody at the plant at all that [she] had called MIOSHA[,]" and she never told "anybody at the plant that [she] submitted paperwork to MIOSHA[.]"  (*Id.* at 176:7-12.)  Despite this testimony, Plaintiff asks this Court to infer a causal connection between her protected activity and her termination on the basis that Mr. Hensley "knew that she was going to call MIOSHA[] because he is the one that told her to do it."  (Pl.'s Resp. 14.)  This Court will not do.

       As an initial matter, the fact that Mr. Hensley purportedly[8] told Plaintiff to report the shocking incident to MIOSHA is of no avail.  The WPA prohibits *employers* from taking adverse actions against employees on the basis of an employee's protected conduct.  Mich. Comp. Laws § 15.362.  The National Labor Relations Act expressly excludes the possibility that a union representative is an agent of the employer.  29 U.S.C. § 152(2) (defining employer and excluding "any labor organization . . . or anyone acting in the capacity of officer or agent of such labor organization[]" from the definition).  Accordingly, the fact that Mr. Hensley

_____

[8] The Court uses the term "purportedly" because Dave Hensley testified at his deposition that he had no recollection of Plaintiff ever talking to him about a safety concern with regard to the labeler device.  (Hensley Dep., Def.'s Mot. Ex. 18 at 50:16-20.)  A necessary corollary of this testimony, one would assume, is that Mr. Hensley does not recall telling Plaintiff to report her concern to MIOSHA.

"knew" that Plaintiff was going to call MIOSHA does not impute such knowledge to Defendant.[9]

Of greater consequence, Plaintiff's conclusion that Mr. Hensley must have reported the shocking incident to Pinnacle management or human resources lacks evidentiary support.  Plaintiff asks this Court to infer that someone with decision-making authority had knowledge of Plaintiff's safety concerns because Mr. Hensley advised Plaintiff to report the shocking incident to a public authority. (Pl.'s Resp. 7.)  This inference is warranted, according to Plaintiff, because "Defendant held both weekly and monthly meetings to discuss the issues of its employees[;]" "[t]he monthly meetings were between management and the union [and t]he weekly meetings were between the union and HR[.]"  (*Id.*)  As such, Mr. Hensley must have mentioned that Plaintiff was shocked on the labeler device because he testified at his deposition that he always reports the safety concerns of union members to management if and when they arise.  Plaintiff seems to acknowledge that this argument is hypothetical as she admitted during her deposition that she had no knowledge of Mr. Hensley relaying any such information to anybody at Pinnacle; irrespective of the paucity of evidence, however, Plaintiff indicated that such a situation remains "a possibility[.]"  (Pl.

---

[9] The Court points out that even if Mr. Hensley did tell Plaintiff to call MIOSHA, this does not mean that he "knew" Plaintiff would follow his advice. Plaintiff testified that she never told Mr. Hensley that she called MIOSHA.  (Pl. Dep., Def.'s Mot. Ex. 2 at 176:5-6.)

16

Dep., Def.'s Mot. Ex. 2 at 178:3-11.)  Speculation and conjecture do not suffice at

the summary judgment stage.

Although Plaintiff's counsel implored this Court to construe Mr. Hensley's

statement that he always reports safety concerns to management as circumstantial

evidence that he did actually report Plaintiff's concerns to management, to

establish causation using circumstantial evidence, the "circumstantial proof must

facilitate reasonable inferences of causation, not mere speculation." *Skinner v.

Square D Co.*, 445 Mich. 153, 164, 516 N.W.2d 475, 480 (1994).  Plaintiff's

unconfirmed suspicions about Mr. Hensley communicating his conversation with

Plaintiff to management or human resources are all the more baffling in light of

Defendant's evidence – consisting of sworn deposition testimony and sworn

affidavits – showing that nobody involved in the termination decision had

knowledge that Plaintiff was shocked or that she was going to report the incident to

a public authority.  (Struder Dep., Def.'s Mot. Ex. 4 at 85:3-12; Davlin Dep.,

Def.'s Mot. Ex. 6 at 60:9-61:9; Struder Aff., Def.'s Mot. Ex. 15 at ¶¶ 8-11

(affidavit of Human Resources Supervisor); Hudson Aff., Def.'s Mot. Ex. 16 at ¶¶

8-11 (affidavit of Manager of Human Resources); DeWitte Aff., Def.'s Mot. Ex.

17 at ¶¶ 11-15(affidavit of Human Resources Representative)).  The Court rejects

Plaintiff's proposed inference as not only is the inference "not deducible from" the

facts, but it is not even "an explanation consistent with known facts or

17

conditions[.]" *Shaw v. City of Ecorse*, 283 Mich. App. 1, 15, 770 N.W.2d 31, 40

(2009) (quoting *Skinner*, 445 Mich. at 164, 51 N.W.2d at 480).

Plaintiff has failed to produce evidence creating a genuine issue of material

fact with respect to whether Defendant had "objective notice" that she had

contacted a public body regarding her safety concerns, or that she was allegedly

about to file a report.  As such, Plaintiff has not established a causal connection

between her protected activity and her termination and has therefore failed to

adduce sufficient evidence demonstrating a *prima facie* case under the WPA.

**B.    Plaintiff Has Not Demonstrated that Defendant's Stated Reason for the Adverse Employment Action was Pretextual**

Assuming that Plaintiff made out a *prima facie* WPA claim, Defendant

articulated a legitimate non-retaliatory reason for Plaintiff's discharge, namely, that

Plaintiff violated Rule 10A[10] by "walking off the job," received a ten-day

suspension, accumulated ten demerits (one for each day of suspension), and was

terminated because seasonal employees such as Plaintiff are permitted a maximum

of six demerits before they are discharged.  (Def.'s Br. 7-8.)  Because ten demerits

clearly exceeded the six permitted by Defendant's company policy, Plaintiff was

terminated.  A human resources representative conducted an investigation and

---

[10] Rule 10A provides: "Any employee who leaves Company property, other than at lunch time and quitting time, without his/her supervisors [sic] permission is considered as having WALKED OFF THE JOB."  (Employee Handbook, Def.'s Mot. Ex. 1.)  A first-time infraction of this rule will give rise to a written warning carrying a suspension of two to ten days.  (*Id.*)

determined that Plaintiff walked off the job when she left work at the end of her regularly-scheduled shift on September 14, 2012, despite the fact that notice had been posted that Plaintiff's line was scheduled for overtime.[11]  (DeWitte Aff., Def.'s Mot. Ex. 17 at ¶¶ 4-10.)  Thus, to defeat summary judgment, Plaintiff must demonstrate, by a preponderance of the evidence, that Defendant's articulated reason for terminating Plaintiff was merely a pretext for retaliation.  *Hopkins v. City of Midland*, 158 Mich. App. 361, 379, 404 N.W.2d 744, 752 (1987).  To do so, Plaintiff must demonstrate that the evidence in this case is sufficient to permit a reasonable trier of fact to conclude that Plaintiff's protected activity was a motivating factor in the adverse action taken by Defendant.  *Jennings v. Cnty. of Washtenaw*, 475 F. Supp. 2d 692, 714 (E.D. Mich. 2007).

In support of her claim that the legitimate nonretaliatory reason for her discharge is a mere pretext for unlawful retaliation, Plaintiff argues that she did not violate Rule 10A.  Plaintiff argues that "she looked to see if she was scheduled for overtime . . . but nothing was posted for her."  (Pl.'s Br. 17 (citing deposition testimony).)  In essence, Plaintiff argues that she did not violate the rule because she did not need permission to leave at the end of her shift.  But Plaintiff's argument does not end there.  She points to the fact that when her regularly-scheduled shift came to an end, she looked for her crew leader, who would

---

[11] Plaintiff never contested the termination by filing a grievance with her union.  (Pl.'s Dep., Def.'s Mot. Ex. 2 at 127.)

normally replace her on the line.  (*Id.*)  When she could not find him, she found a

"fill-in Crew Leader," who told her that she could leave.  (*Id.*)  Thus, even if she

was scheduled for overtime, Plaintiff suggests that she had a supervisor's

permission to leave work.  These arguments miss the mark because in order to

show pretext, Plaintiff must do more than establish that Defendant mistakenly

believed that she had violated company policy.  Rather, Plaintiff must show that

those involved in the termination decision did not actually believe the human

resources investigation finding that Plaintiff violated Rule 10A.  Stated differently,

a "plaintiff cannot simply show that the employer's decision was wrong or

mistaken, since the factual dispute at issue is whether discriminatory animus

motivated the employer, not whether the employer is wise, shrewd, prudent, or

competent."  *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 704, 568 N.W.2d 64, 72

(1997) (quotation omitted).

Plaintiff has not pointed to any record evidence suggesting that retaliatory

animus motivated the discharge decision.  As such, summary judgment is

appropriate as a matter of law.

**C.     Plaintiff Is Not Entitled to Amend Her Complaint**

At the September 19, 2013 motion hearing, Plaintiff's counsel indicated that

if the Court granted Defendant's Motion for Summary Judgment, Plaintiff should

have an opportunity to amend the underlying complaint to include a count of

retaliatory discharge in violation of public policy.  Plaintiff believes such an amendment would be proper if the Court believes that Plaintiff's complaints to management prompted her termination.

## 1.    *Applicable Law*

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is "freely" granted "when justice so requires."  *See* Fed. R. Civ. P. 15(a)(2).  The Supreme Court of the United States has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  However, the Court further instructed that a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.  *Id.*

An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  Prejudice may result from delay, but "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted."  *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.

1994) (citations omitted).  A court also should consider whether the amendment will require the opposing party "to expend significant additional resources to conduct discovery and prepare for trial" or whether it will "significantly delay the resolution of the dispute," as either effect constitutes prejudice.  *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

## 2.    *Application*

Plaintiff contends that Defendant would not be prejudiced by the amendment because discovery has finished and no additional depositions are necessary.  The Court, however, does not agree.  While Plaintiff's proposed amendment *may* survive a Rule 12(b)(6) motion and is therefore not futile as defined in *Rose*, *supra*, Plaintiff has not pointed to any record evidence showing that any of the three individuals involved in the decision to terminate Plaintiff had knowledge of her workplace injury or her concerns about the labeler device.  As such, it is reasonable to infer that additional discovery would be required if Plaintiff was to prevail on the claim.  Given that discovery has closed, Defendant would have to expend significant additional resources to defend a claim that Plaintiff could have included in the original complaint.  Moreover, the addition of an entirely new cause of action would delay the resolution of this action.  The Court therefore finds that Defendant would be unduly prejudiced if Plaintiff was granted an opportunity to amend the Complaint.

22

The Court also finds that undue delay in seeking the amendment renders the belated request improper.  Plaintiff does not explain why the proposed amendment was not sought sooner nor suggest that she only became aware of the proposed cause of action through the discovery process.

Plaintiff's request to amend is therefore denied.

### IV.    Conclusion and Order

For the reasons above, the Court concludes that Plaintiff has failed to discharge her summary judgment burden of pointing to record evidence establishing a *prima facie* case of retaliation.  Alternatively, the Court finds that Plaintiff has failed to establish the existence of disputed material facts with respect to whether Defendant's stated reason for terminating Plaintiff's employment was a mere pretext for retaliation.  Lastly, the Court denies Plaintiff's request to amend the Complaint as the proposed amendment comes too late in these proceedings and Defendant will suffer undue prejudice if Plaintiff's request is granted.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and the instant action is **DISMISSED WITH PREJUDICE**.


Date:  September 25, 2013

                          s/PATRICK J. DUGGAN
                          UNITED STATES DISTRICT JUDGE

Copies to:

**Brian M. Garner, Esq.**
**John F. Birmingham, Jr., Esq.**